## Case No. 11,859.

RISLEY v. INDIANAPOLIS, B. & W. RY. CO. et al.

[7 Biss. 408.] [1]

Circuit Court, D. Indiana. April. 1877.

EVIDENCE — PROOF OF HANDWRITING — VARIANCE IN SIGNATURE—WEIGHT OF EVIDENCE.

1. A variance in a signature is not necessarily proof of its being a forgery. Dissimilitude may be occasioned by a variety of circumstances, by the state of health and spirits of the writer, by the materials, by his position, or by his hurry or care.

2. If a witness swears that he was present and saw a party sign a disputed instrument of writing, his evidence ought to outweigh the statement of another (both witnesses being equally credible) who testifies that he is acquainted with the handwriting of the alleged signer and that he does not believe the signature to be genuine.

[This was an action at law by John E. Risley against the Indianapolis, Bloomington & Western Railway Company and others.]

Baker, Hord & Hendricks, D. W. Voorhees, Henry Crawford, and Buskirk & Nichols, for plaintiff.

McDonald & Butler and Harrison, Hines & Miller, for defendants.

GRESHAM, District Judge (charging jury). John E. Risley, the plaintiff, recovered a judgment in the supreme court of Marion county against the Indianapolis, Blooming-

ton and Western Railway Company for $55,879. This judgment was appealed to the supreme court of this state, and in so doing the bond in suit was filed. The railway company makes no defense, and as to it your verdict will be for the plaintiff.

The defendants, Willson, Nebeker and Gish, who are sued as sureties, each by his separate plea, under oath, technically called non est factum, denies the execution of the bond. These pleas present the only issue in the case, and while admitting every other material allegation in the declaration, they throw upon the plaintiff the burden of proving that the sureties did sign the instrument; and in order to justify you in finding a verdict for the plaintiff against any one of the sureties, it must appear by fair preponderance of all the evidence that the bond was signed by that surety. The sureties are not required to prove that they did not sign the bond. The plaintiff has the affirmative of the issue, and unless you think he has supported it, as already stated, by a fair preponderance of all the evidence against all or some one of the sureties, he is not entitled to a verdict.

There is a conflict in the testimony of the witnesses. That conflict is found in the evidence of those who testify from personal knowledge, as well as those who spoke from opinion or belief only. In case of such conflict it is the duty of the jury to endeavor to so reconcile the testimony as to impute perjury to no one. If, however, after carefully weighing all the evidence, you are unable to escape the conviction that there is dishonesty in the case, then you should promptly and fearlessly locate that dishonesty where your judgments and consciences tell you it belongs.

Remembering, then, that the burden of the issue is on the plaintiff, you have the testimony of C. W. Smith that on the 27th day of September, 1872, the day the bond bears date, he wrote a dispatch and gave it to the operator of the company at Indianapolis, to be sent to Crawfordsville, requesting the defendant Willson to meet him at the station at that place on the arrival of the train that day; that Willson did meet him as requested, when at Smith's solicitation, and in his presence, he signed the bond; that with the bond thus signed by Willson, he proceeded on the same train to Covington; that at the same time that he left with the operator at Indianapolis the dispatch for Willson, he also left a dispatch for Cherry, the operator at Covington, directing the latter to request the defendant Nebeker, to meet him at the station at that place on the arrival of the train the same day; that, arriving at Covington he met Nebeker at the station, where he requested him to sign the bond as surety, and procure still another signature to it; that Nebeker took the bond, saying he would sign it as requested, and then have it signed by his partner, Gish, after which he would send

it to Smith, at Urbana. Papers in Smith's handwriting, purporting to be the original dispatches left by him with the operator at this place, to be sent to Willson, at Crawfordsville, and Cherry, at Covington, are in evidence. If you believe these are genuine dispatches, and in fact were sent from Indianapolis to Crawfordsville and Covington, announcing to Willson and Nebeker the coming of Smith, then those circumstances certainly strongly tend to corroborate Smith's evidence.

If, however, you believe those dispatches, or any others in evidence, are bogus; that instead of being genuine, as they purport to be, they have been fabricated in whole or in any material part to corroborate Smith, then you will hardly hesitate about discarding Smith's entire testimony. It seems to be conceded that if the testimony of Smith is not entiteld to belief the plaintiff cannot recover. If the bond is a forgery as to the sureties, it is difficult to escape the belief that Smith was concerned in the crime. His employments, both before and since the date of the bond, show that he was a man of sufficient judgment and ability to successfully manage important departments in the operation of large railroad corporations. At the date of the bond he was general manager of the Indianapolis, Bloomington and Western Railway Company, and two of the defendants, Willson and Nebeker, were directors in that company. What interest or motive could have tempted him to commit such a crime? Is it probable from anything in the evidence that he would thus have forged the names of three well known citizens?

These and like considerations may aid you in weighing the evidence of Smith. The real question, however, which you are called upon to decide is, whether or not the defendants signed the bond? If they did not they are not liable, whether Smith or some one else forged it.

Griggs testifies in his deposition that at the Neil House, at Columbus, Nebeker admitted to him that he did sign the Risley bond. Witnesses testifying to the admissions of parties out of court frequently fail to convey to the jury the exact meaning of what was said. This may result from defective recollection as well as from indifference or inattention to what really was said. But if you believe Nebeker did say to Griggs that he had signed the Risley bond, and that he referred to the bond in suit, then, as to Nebeker, you have an admission that the bond is genuine. I need hardly say that the law regards such evidence as material and convincing. The other testimony of the plaintiff, more or less confirmatory of the main points already alluded to, I will not stop to notice further than to say that you will give it all its due weight. No one has testified that he saw Gish sign the bond, or heard him admit that he had signed it. As to him the plaintiff must rely on the testimony of the witnesses who said they were familiar with his handwriting, and that in their opinion his signature to the bond was genuine, and, in addition thereto, the circumstances and facts which apply with like force to all the defendants.

Passing next to the evidence of the other side, you have the positive testimony of Willson, Nebeker and Gish, that they did not sign the bond. The sureties have long lived in Montgomery and Fountain counties, their callings have been such as to afford ample opportunity for their neighbors to become familiar with their handwriting and signatures. Many of those neighbors of acknowledged intelligence and integrity, have testified that they were acquainted with their handwriting, and that in their opinion the signatures to the bond were not genuine. While the opinion of witnesses thus given is material and competent evidence for the defendants, and should receive the weight to which it is justly entitled, you will readily perceive why evidence of this character should be received with caution.

On cross-examination the witnesses undertook to point out wherein the signatures in dispute were unlike the genuine signatures of the defendants. It is for you to say whether the supposed variations pointed out by the witnesses were trivial or important. We know that men, even good scribes, do not always sign their names exactly the same way. Dissimilitude may be occasioned by a variety of circumstances, by the state of health and spirits of the writer, by the materials, by his position, and by his hurry or care. And in this connection the question will doubtless occur to you whether the witnesses who testified on this point would have given their opinions that the signatures were bogus, had they not looked at the bond with their minds unconsciously swayed by the impression created by the defense set up by the sureties. The testimony of a witness who speaks from his own personal knowledge is more satisfactory and convincing than the testimony of another who speaks of matters which lie in opinion only.

If a witness swears that he was present and saw a party sign a disputed instrument of writing, his evidence ought to outweigh the statement of another (both witnesses being equally credible) who testifies that he is acquainted with the handwriting of the alleged signer and that he does not believe the signature is genuine. This suggestion applies to the positive testimony of Smith in connection with the evidence of the witnesses who gave their opinion as to the genuineness of the disputed signatures from a knowledge of the handwriting of the three defendants. In weighing the evidence of Willson, Nebeker and Gish, you will not forget that they are defendants, testifying in their own behalf, with heavy pecuniary interests at stake; which circumstances go to their credit.

All other facts which are relied on by the

defendants as tending to support their side of the issue, and to which your attention has been called by counsel, you will give due weight to, without further summing up by the court.

Mrs. Willson, the wife of one of the defendants, was permitted to testify before you as to certain facts in the case. She was not a competent witness for or against her husband, and was permitted to testify, as was stated at the time, only in behalf of the defendants, Nebeker and Gish, and you will consider her evidence only so far as it bears on the case as to them.

With one or two exceptions the witnesses all testified in your presence. The law justly regards cross-examinations as one of the most efficacious tests of the truth. That test has been unsparingly applied in this case, especially to the defendants, Willson, Nebeker and Gish, and to C. W. Smith. The purpose was the better to enable you to see how far, if at all, the witnesses were influenced by their situation, their interests, their bias, their sympathy and friendship, and also to give you an opportunity of judging of the strength and accuracy of their recollections and their knowledge of the facts of which they spoke. You are the exclusive judges of the credibility of the witnesses and of the weight of their testimony.

This trial is important not only in the amount involved, but still more so in the fact that it seriously concerns the characters of men who have testified on both sides, and who have, heretofore, enjoyed the confidence and esteem of the public.

As might be expected in such a case, the zeal and ability displayed by eminent counsel on both sides during the progress of the trial, as well as in the final argument, have not been out of proportion to the responsibility resting upon them.

Having arrived at a conclusion after a patient and intelligent consideration of all the evidence, let there be no hesitation about your verdict. You have no right to think of consequences. Keep this steadily in view.

The jury disagreed.